**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 17-cv-01821-CMA

KARL J. PUTNAM,

     Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

     Defendant.

---

## ORDER AFFIRMING THE DENIAL OF BENEFITS

---

     This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff Karl Joseph Putnam's application for disability insurance benefits. Jurisdiction is proper pursuant to 42 U.S.C. § 405(g).

     Plaintiff argues that the administrative law judge's ("ALJ") determination that Plaintiff is capable of performing work that exists in significant numbers is erroneous for four reasons. (Doc. # 19.) Because the ALJ's analysis was supported by substantial evidence and because the ALJ used the correct legal standards, the Court rejects Plaintiff's arguments and affirms the decision of the Commissioner.

# I.     BACKGROUND

Plaintiff, born on December 26, 1963, was 51 years old on June 23, 2015, the date of the alleged onset of his disability.  (Doc. # 11-5 at 221.)[1]  For several years prior to the alleged onset of his disability, Plaintiff worked at various times as a technical director at a television station, a manager at a check cashing establishment, and a customer service agent for a telephone company.  (Doc. # 11-6 at 272.)

On August 13, 2015, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34.  (Doc. # 11-5 at 221–27.) He alleged that he suffered from six limiting conditions: "bipolar depression;" posttraumatic stress disorder ("PTSD"); obsessive compulsive disorder; "back problems;" "chronic right shoulder problems;" and "left leg problem[s]."[2]  (Doc. # 11-6 at 271.)  His application was initially denied on February 9, 2016, by an administrator at the regional Social Security office in Colorado Springs, Colorado.  (Doc. # 11-3 at 111–28.)  Plaintiff, represented by attorney Jenna D. Lopes, *see* (Doc. # 11-4 at 148–49), filed a written request for a hearing before an ALJ on March 3, 2016.  (*Id.* at 133–34.)

ALJ Kurt D. Schuman conducted a hearing on August 10, 2016, in Colorado Springs, Colorado.  (Doc. # 11-2 at 30–78.)  Plaintiff and his counsel were present, as were Dr. Ronald Houston, an impartial medical expert, and Mr. Prudig, an impartial vocational expert.  (*Id.* at 30.)  Plaintiff testified that he was discharged from the United

---

[1] All of the exhibits filed Doc. # 11 constitute the Administrative Record in this matter.  The Court cites to the docket number of the exhibit (e.g., Doc. # 11-5) and the page number from the Administrative Record (e.g., at 221).

[2] Though Plaintiff's application and the ALJ's decision addressed Plaintiff's alleged physical limitations, Plaintiff raises issues on appeal only in regards to his claimed mental limitations. *See* (Doc. # 19.)  The Court therefore limits this Order to Plaintiff's mental limitations.

States Navy after testing positive for marijuana use in the early 1980s and that he had since been convicted of driving under the influence ("DUI") three times. (*Id.* at 40, 45.) He testified that he was presently working up to eleven hours a week as a product demonstrator in grocery stores but that due to his "bipolarism and PTSD and high anxiety levels," he was unable to work in a full-time position. (*Id.* at 47–48.)

The ALJ asked Dr. Houston, the impartial medical expert, if he had sufficient medical evidence to establish the presence of a medically determinable mental impairment, and Dr. Houston testified that he was unable to rate various criteria "due to conflicts in the record." (*Id.* at 74.) Dr. Houston specifically contrasted the report of psychological consultative examiner Dr. Richard Madsen, *see* (Doc. # 11-10 at 534–42), with the report of physical consultative examiner Dr. Rosemary Greenslade, *see* (*id.* at 543–54), both of which were completed in January 2016, and stated, "So for me this record is entirely confounded, complicated and conflicted, and my suggestion here is that we're going to need another [consultative examination ("CE")]." (Doc. # 11-2 at 74.) The ALJ stated that he "had real concerns about [Dr. Madsen's consultative examination report] from the get-go" as well and ordered a second consultative examination. (*Id.* at 75.)

At the request of the ALJ, Dr. R. Terry Jones performed a consultative examination on October 3, 2016. *See* (Doc. # 11-13 at 718–31.)

The ALJ conducted a second hearing on December 13, 2016. (Doc. # 11-2 at 79–110.) Plaintiff, his counsel, and medical expert Dr. Houston were again present and were joined by another impartial vocational expert, Ms. Nora Dunne. (*Id.* at 79.) The

ALJ continued his questioning of Dr. Houston about Plaintiff's mental impairments. (*Id.* at 90.) Dr. Houston testified that the paragraph A criteria was satisfied with regard to 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.08 (personality and impulse-control disorders).[3] (*Id.* at 90–91.) As to the paragraph B criteria, Dr. Houston testified that, in view of the entire record, Plaintiff had mild limitations in activities of daily living, marked limitations in his social interactions, and mild limitations as to concentration, persistence, and pace. (*Id.* at 92–93.) Dr. Houston stated that Plaintiff's claimed mental impairments did not satisfy the paragraph C criteria. (*Id.* at 93.) The ALJ also asked Dr. Houston several questions about Plaintiff's capacities to perform certain functions (e.g., remember; carry out instructions) and in certain settings (e.g., an isolated work setting). (*Id.* at 97–100.)

The ALJ then questioned the impartial vocational expert, Ms. Dunne. (*Id.* at 102–08.) He presented Ms. Dunne with three hypothetical claimants of varying degrees of

---

[3] The ALJ and Dr. Houston were referring to the Social Security Administration's Listing of Impairments, 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The listings "are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system them affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990).

Mental disorders are listed at section 12.00 of the appendix. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Each listed mental disorders is defined by two or three paragraphs, designated A, B, and C. *Id.* For a listed mental disorder that is defined by only two paragraphs, the claimant's "mental disorder must satisfy the requirements of both paragraphs A and B." *Id.* For a listed mental disorder that is defined by three paragraphs, the claimant's mental disorder "must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." *Id.* Paragraph A of each listing is the medical indicators that must be present in the claimant's medical evidence. *Id.* Paragraph B provides the functional criteria the Social Security Administration assesses, in conjunction with a rating scale, to evaluate how the claimant's mental disorder limits his or her functioning. *Id.* Paragraph C, where included, provides the criteria the Administration uses to evaluate "serious and persistent mental disorders." *Id.*

4

physical and mental limitations and asked whether jobs existed in the national economy

appropriate for them.  In the second hypothetical, Ms. Dunne testified that an individual

with Plaintiff's age, education, work experience, and residual functional capacity would

be able to perform jobs such as "housekeeping cleaner, . . . marking clerk, and . . .

routing clerk."  (*Id.* at 106.)

The ALJ issued his decision on January 11, 2017, and concluded that Plaintiff

was not disabled under Sections 416(i) and 423(d) of the Social Security Act.  (*Id.* at

14–29.)  The ALJ determined that Plaintiff had several severe impairments—"bipolar I

disorder; cognitive disorder; post-traumatic stress disorder (PTSD); personality disorder;

degenerative disc disease; lumbar spine; and tendonitis, left shoulder"—but that these

impairments did not meet or medically equal the severity of one of the listed

impairments.  (*Id.* at 19–20.)  With regard to Plaintiff's mental impairments, the ALJ

found that the paragraph B criteria were not satisfied because Plaintiff had only "mild

restriction" in activities of daily living, "marked difficulties" in social functioning, and "mild

difficulties" in concentration, persistence, or pace.  (*Id.* at 21.)  The ALJ determined

Plaintiff had the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work as
> defined in 20 CFR 404.1567(b) except the claimant is able to climb
> ladders, ropes, and scaffolds occasionally, and is able to climb ramps and
> stairs frequently.  He is able to balance constantly.  He is able to stoop
> occasionally.  He is able to crouch, kneel, and crawl frequently.  The
> claimant is further limited to occasional overhead reaching with his left
> upper extremity.  The claimant is further limited in that he must avoid even
> occasional use of moving and/or dangerous machinery, and even
> occasional exposure to unprotected heights.  The claimant is further
> limited to work that consists of only simple, routine, and repetitive tasks.
> He is able to maintain sufficient attention and concentration for extended
> periods of two-hour segments during a normal workday with normal

> breaks.  The claimant is further limited to work that requires no more than brief (defined as "of short duration"), and superficial (defined as "occurring at or on the surface"), interaction with the public, and to work that can be around co-workers throughout the workday, but with only occasional interaction with co-workers.  He is further limited to work that requires no more than brief and superficial supervision, defined as requiring a supervisor's critical checking of his work.

(*Id.* at 22.)  Finally, based on the vocational expert's testimony, the ALJ concluded that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at 28–29.)

Plaintiff requested that the Appeals Council review the ALJ's decision and submitted reasons that he disagreed with the decision.  The Appeals Could denied Plaintiff's request for review on May 24, 2017.  (*Id.* at 1–6.)   When the Appeals Council declined review, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981; *see Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006).

Plaintiff initiated the instant action on July 26, 2017, seeking reversal of the ALJ's decision and the award of disability insurance benefits to him.  (Doc. # 1.)  After the administrative record was filed, Plaintiff submitted his Opening Brief on November 17, 2017.  (Doc. # 19.)  The Commissioner responded in support of the ALJ's decision on December 6, 2017 (Doc. # 20), to which Plaintiff replied on December 17, 2017 (Doc. # 23).

## II.    <u>STANDARD OF REVIEW</u>

When reviewing the Commissioner's decision, the Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied the correct legal standards."  *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir.

1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). First, the Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938). "Substantial evidence is more than a scintilla, but less than a preponderance . . . ." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987).

In reviewing the record to make the substantial evidence determination, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In addition, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation marks and citation omitted). Also, the Court "defer[s] to the ALJ on matters involving the credibility of witnesses." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "A finding of '"no substantial evidence" will be only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

Second, in addition to the absence of substantial supporting evidence, "[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*,

987 F.2d 1482, 1487 (10th Cir. 1993). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and collecting cases). Harmless error exists where it is "inconceivable" that a different administrative conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

## III.   LAW

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial work which exists in the national economy. . . .

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. 20 C.F.R. § 404.1512(a); *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009).

The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The steps of the evaluation are whether: (1) the claimant is currently working; (2) the claimant has a severe impairment; (3) the claimant's impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) the impairment precludes the claimant from doing her past relevant work; and (5) the impairment precludes the claimant from doing any work. *See* 20 C.F.R. §§ 404.1512(g), 404.1560(c); *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 (10th Cir. 2007). A finding that a claimant is or is not disabled at any point in the five-step evaluation process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F. 2d 799, 801 (10th Cir. 1991).

## IV.   ANALYSIS

Plaintiff argues that the ALJ erred in four ways:

I.      The ALJ failed to properly evaluate the evidence, adequately explain the conflicts in the evidence, and why he gave little weight to the opinion of Richard Madsen, Ph.D.

II.     The ALJ failed to properly evaluate the Claimant's subjective complaints of mental impairments and dysfunction that can reasonably be accepted as consistent with the objective medical evidence and provide adequate rationale[, and] [t]he ALJ erred when he failed to make a credibility finding regarding Claimant's statements about the severity of his impairments.[4]

III.    The ALJ improperly attempted to insert 12.09, substance addiction, as an impairment.

IV.     The ALJ improperly excluded from his decision the [vocational expert's] testimony that there were no jobs available in the economy after a hypothetical that included the Claimant's impairments.

(Doc. # 19 at 1–2.) The Court rejects each argument in turn.

---

[4] Plaintiff presents these arguments about the ALJ's treatment of his (Plaintiff's) subjective statements as two separate issues. *See* (Doc. # 19 at 1.) Because they both concern Plaintiff's subjective complaints, *see* (*id.* at 18–20), the Court addresses the two arguments together.

## A. THE ALJ'S TREATMENT OF DR. MADSEN'S CONSULTATIVE EXAMINATION REPORT

Dr. Madsen conducted the first psychological consultative examination on Plaintiff on January 28, 2016, pursuant to a referral by Colorado Disability Determination Services.  (Doc. # 11-10 at 534–42.)  After detailing Plaintiff's complaints, Dr. Madsen concluded that Plaintiff had "symptoms of PTSD," "panic attacks with agoraphobia," and "mood swings mainly with depression and agitation."  (*Id.* at 537.)  Dr. Madsen observed that Plaintiff had "difficulty relating to authority figures, . . . [and] [h]is ability to do work-related activities [was] impaired because of these things."  (*Id.* at 537.)  He determined that Plaintiff's abilities to perform work activities on a consistent basis and to accept instructions from supervisors were impaired on marked levels, and Plaintiff's abilities to perform simple and repetitive tasks on a consistent basis, to maintain acceptable attendance in the workplace, to complete a normal workday/week without interruptions from his impairments, and to interact with coworkers and the public were impaired on moderate to marked levels.  (*Id.* at 537–38.)

At the first hearing, impartial medical examiner Dr. Houston stated that Dr. Madsen's report had "very limited value" because it contrasted with other evidence and reports in the record, and he suggested that the ALJ request another consultative examination.  (Doc. # 11-2 at 74.)  The ALJ ordered a second consultative examination because "unfortunately [he] had real concerns about [Dr. Madsen's report] from the get-go."  (*Id.* at 75.)

The ALJ, in his decision, addressed Dr. Madsen's report when evaluating the opinion evidence for purposes of determining Plaintiff's RFC.  (*Id.* at 24–25.)  The ALJ

"accept[ed] that the claimant ha[d] marked limitations in social functioning," but he gave "little weight to the remainder" of Dr. Madsen's report, "as it [was] inconsistent with other contemporaneous medical evidence showing improvement in [Plaintiff's] symptoms and intact memory." (*Id.* at 25.)  The ALJ cited Dr. Greenslade's consultative examination report, *see* (Doc. # 11-10 at 545), and various progress notes from Aspen Pointe, *see* (*id.* at 592; Doc. # 11-14 at 790), as evidence in conflict with Dr. Madsen's conclusion. (Doc. # 11-2 at 25.)  The ALJ also noted that Dr. Houston, "who reviewed the entire medical record, also testified that Dr. Madsen's opinion was inconsistent with the medical record." (*Id.* at 25.)

     1.    <u>Legal Principles</u>

Under the regulations, the Social Security Administration's rulings, and the case law of the Tenth Circuit, an ALJ must "give good reasons" for the weight he or she assigns to each medical opinion.  20 C.F.R. § 1527(c); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).  Among the factors an ALJ must consider in deciding the weight to give a medical opinion is consistency.  20 C.F.R. § 1527(c)(4); *see Goatcher v. U.S. Dep't of Health & Human Serv.*, 52 F.3d 288, 290 (10th Cir. 1995).  The Administration's regulations state, "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."  20 C.F.R. § 1527(c)(4).

An ALJ has a duty to resolve any conflicts in the medical record, *Richardson v. Perales*, 402 U.S. 389, 399 (1971), and his or her explanation of resolving a conflict is not sufficiently specific if he or she merely states that a medical opinion is unsupported

or inconsistent with the medical evidence without further explanation, *Scrivner v. Berryhill*, 323 F.R.D. 663, 668 (D.N.M. 2018) (citing *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)).  Additionally, an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).  The ALJ must instead "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  *Scrivner*, 323 F.R.D. at 668 (quoting SSR 96-8p).

The question governing this Court's review is whether the ALJ's findings with respect to the weight given Dr. Madsen's opinion were based on substantial evidence. Judicial review is limited to the reasons stated in the ALJ's decision, and the Commissioner may not rationalize the ALJ's decision *post hoc*.  *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

2.  Analysis

Plaintiff argues that the ALJ failed to "adequately explain the conflicts in the evidence and why he gave little weight to the opinion of [Dr. Madsen.]"  (Doc. # 19 at 17.)  He criticizes the ALJ's citation to two progress notes from Aspen Pointe on the grounds that these progress notes were just two of fifty-four progress notes in the record and that they were not an "accurate indication of the day-to-day condition of the patient."  (*Id.*)  Plaintiff then asserts that Dr. Madsen's report was "extremely similar" to the report of the second consultative examiner, Dr. Jones, *see* (Doc. # 11-13 at 718–31).  (Doc. # 19 at 17–31.)  The Court infers that Plaintiff is taking issue with that ALJ's

decision to give "little weight" to portions of Dr. Madsen's report, while giving "great weight" to Dr. Jones's report. (*Id.*); *see* (Doc. # 11-2 at 25–26.)

The ALJ's assignment of "little weight" to portions of Dr. Madsen's report was based on substantial evidence, and the ALJ adequately explained why such a weighting was appropriate. The ALJ wrote that he gave little weight to Dr. Madsen's opinion because it was "inconsistent with the other contemporaneous medical evidence showing improvement in his symptoms and intact memory," and, as the Court previously described, cited to three exhibits inconsistent with Dr. Madsen's conclusions. (Doc. # 11-2 at 25.) These three exhibits were just examples; there are several other records in which Plaintiff's treating physician and other medical professionals recorded normal mental status examinations. *See, e.g.*, (Doc. # 11-10 at 594; Doc. # 11-14 at 788, 855.) Moreover, Dr. Houston, the impartial medical examiner, also found inconsistencies between Dr. Madsen's report and the medical record, going so far as to testify that Dr. Madsen's report had "very, very limited value, particularly when you contrast [his] mental status exam" with other records. (Doc. # 11-2 at 74.) The Court therefore concludes that the ALJ's weighting of Dr. Madsen's report was supported by substantial evidence and that his explanation was sufficiently specific.

## B.      THE ALJ'S TREATMENT OF PLAINTIFF'S SUBJECTIVE COMPLAINTS

In explaining how he arrived at Plaintiff's RFC, the ALJ assessed Plaintiff's symptoms "based on the requirements of 20 C.F.R. § 404.1529 and [Social Security Ruling] 96-4." (Doc. # 11-2 at 22–23.) The ALJ wrote:

> After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be

expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are **not entirely consistent with the medical evidence** and other evidence in the record for reasons explained in this decision.

(*Id.* at 23) (emphasis added). The ALJ then proceeded to paraphrase Plaintiff's medical record and to analyze the opinion evidence therein. (*Id.* at 23–27.) The ALJ "accepted that [Plaintiff's] impairments eroded his functional ability," but concluded that "the record does not support that he is as limited as she [sic] alleges." (*Id.* at 27.) He stated that "the record reflects that [Plaintiff's] conditions have improved with compliance to appropriate medication and support a finding that he is able to sustain" some work. (*Id.*)

1.    Legal Principles

Symptoms are a claimant's own description or statement of his physical or mental impairments. 20 C.F.R. § 404.1502(i); SSR 96-8p. At the time Plaintiff filed his claim for disability benefits in 2015, Social Security Ruling ("SSR") 96-7p, "Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements," governed the Commissioner's analysis of a claimant's subjective complaints. On March 28, 2016, however, Social Security Ruling 16-3p expressly superseded Ruling 96-7p. Ruling 16-3p eliminated use of the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. *Wagner v. Berryhill*, No. CIV-16-154, 2017 WL 3981147, *7 (W.D. Okla. Sept. 11, 2017). In 2017, the Social Security Administration clarified that it would apply Ruling 16-3p "when [its adjudicators] make determinations and **decisions on or after March 28, 2016**." SSR 16-3p, 2017 WL 5180304, *13 n.27 (Oct. 25, 2017) (emphasis added). In the instant action, the ALJ issued his decision on January 11, 2017, nearly ten

months **after** Ruling 16-3p superseded Ruling 96-7p. *See* (Doc. # 11-2 at 14–29.)

Ruling 16-3p therefore governed the ALJ's analysis of Plaintiff's subjective complaints.[5]

*See Wagner*, 2017 WL 3981147, *7 (stating that the ALJ's credibility evaluation was

governed by the ruling in place at the time of his decision); *Nunes v. Berryhill*, No. 16-

CV-11499, 2017 WL 4169748, *2 (D. Mass. Sept. 20, 2017) (same).

Ruling 16-3p articulates a two-step process for evaluating a claimant's

symptoms. SSR 16-3p; *see also* 20 C.F.R. § 404.1529. First, the Commissioner

determines "whether the individual has a medically determinable impairment (MDI) that

could reasonably be expected to produce the individual's alleged symptoms." *Id.* The

Commissioner "will not find an individual disabled based on alleged symptoms alone."

*Id.* Second, the Commissioner "evaluate[s] the intensity and persistence of an

individual's symptoms . . . and determine[s] the extent to which an individual's

symptoms limit his or her ability to perform work-related activities for an adult." *Id.* In

evaluating the intensity and persistence of a claimant's symptoms, the Commissioner

"examine[s] the entire case record, including the objective medical evidence." *Id.* The

Commissioner "must consider whether an individual's statements about the intensity,

persistence, and limiting effects of his or her symptoms are **consistent** with the medical

signs and laboratory findings of record." *Id.* (emphasis added). The Social Security

Administration's regulations also require such a comparison:

---

[5] The ALJ did not specify whether his analysis of Plaintiff's symptoms was conducted in accordance with Ruling 96-7p or Ruling 16-3p. *See* (Doc. # 11-2 at 22–23.) He cited only 20 C.F.R. § 404.1529 and SSR 96-4. (*Id.* at 22.) Ruling 96-4 states that a symptom, without more, cannot establish the existence of a medically determinable physical or mental impairment.

[W]e will evaluate your statements in relation to the objective medical evidence and other evidence. . . . We will consider whether there are any **inconsistencies** in the evidence and the extent to which there are any **conflicts** between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4) (emphasis added).

2. <u>Analysis</u>

Plaintiff argues first that the ALJ "failed to properly evaluate [his] subjective complaints of mental impairments and dysfunction that can reasonably be accepted as consistent with the objective medical evidence." (Doc. # 19 at 18.) He faults the ALJ for "disregarding" Dr. Madsen's conclusions, which, he asserts, are "more consistent with the record." (*Id.* at 19.) Plaintiff cites to instances in which he "discussed with his therapists" his mental impairments. (*Id.*) The Court infers from the Opening Brief that Plaintiff believes his symptoms—what he refers to as his "subjective complaints," *e.g.*, (*id.* at 18)—are consistent with medical evidence contained in Dr. Madsen's report and believes the ALJ erred in determining that his symptoms were inconsistent with the medical record. Plaintiff also states that "[s]ubjective statements about one's limitations can be rejected for clear and convincing reasons," citing *Carmickle v. Commissioner*, 533 F.3d 1155, 1160 (9th Cir. 2008). (Doc. # 19 at 19.)

The Court rejects Plaintiff's first argument as to his symptoms because the ALJ's conclusion that Plaintiff's statements about his symptoms "are not entirely consistent

with the medical evidence and other evidence" was supported by substantial evidence. The ALJ detailed Plaintiff's medical record, from the time Plaintiff initiated treatment at Aspen Pointe and the examiner reported he was "appropriately groomed and fully alert and oriented[, and] [h]is memory was grossly intact" to evaluations subsequent to his release from incarceration, when an examiner wrote that he was calm and did not demonstrate abnormalities in thought process or content. (Doc. # 11-2 at 23–24.) The ALJ also cited various opinion evidence that was inconsistent with Plaintiff's reported symptoms. (*Id.* at 24–27.) As to Dr. Madsen's report, the Court has already explained why the ALJ's discounting of Dr. Madsen's opinion was supported by substantial evidence. Finally, Plaintiff's statement that subjective complaints "can be rejected only for clear and convincing evidence" is incorrect and his citation to the Court of Appeals for the Ninth Circuit unavailing. *See* (Doc. # 19 at 19.) *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("Credibility determinations are peculiarly the province of the finder of fact.").

Plaintiff's second argument about his "subjective complaints" is that the "ALJ failed to make a credibility finding regarding [Plaintiff's] statements." (Doc. # 19 at 19–20.) Plaintiff relies on Ruling 96-7p. (*Id.* at 20.)

Plaintiff's second argument, that the ALJ was required to make a credibility finding regarding his symptoms, fails as a matter of law. Credibility determinations were required under Ruling 96-7p. However, as the Court already explained, Ruling 16-3p was issued in early 2016 and explicitly superseded Ruling 96-7p. Ruling 16-3p

governed the ALJ's decision, and it does not require a credibility finding.  It makes no mention of credibility at all.

For these reasons, the Court is satisfied that the ALJ's treatment of Plaintiff's symptoms was supported by substantial evidence and made use of the correct legal standard.

## C.    THE ALJ'S ASSESSMENT OF PLAINTIFF'S SUBSTANCE ABUSE HISTORY

At the first hearing, on August 10, 2016, the ALJ asked Plaintiff about his schooling and work experience, and Plaintiff testified that he was other than honorably discharged from the Navy as a result of a failed urinalysis due to marijuana and cocaine use.  (Doc. # 11-2 at 42–44.)  The ALJ later inquired whether Plaintiff had a driver's license, to which Plaintiff responded that he lost it the year prior when he was convicted of DUI.  (*Id.* at 45.)  Plaintiff testified that he had three convictions for DUI.  (*Id.*)  Later during Plaintiff's testimony, the ALJ asked him if he stilled used marijuana for pain, and Plaintiff testified that he "[a]bsolutely" did so, "daily almost."  (*Id.* at 54.)

The ALJ then heard testimony from Dr. Houston, the impartial medical expert. (*Id.* at 70–77.)  Dr. Houston explained which listed impairments he considered with regard to Plaintiff (12.02, 12.04, and 12.06) and why he believed the paragraph A criteria were satisfied for those listings.  (*Id.* at 73.)  The ALJ said, "And I need to ask, did you at least consider 12.09?"  (*Id.* at 73.)  Dr. Houston responded that he did "look at the 12.09.  Alcohol has been a problem," and then transitioned to discuss the conflicts between Dr. Madsen's report (in which alcohol was not "really integrated into conclusions, recommendations, and what have you") and the rest of the medical record.

(*Id.* at 74.)  The Court ordered a second consultative evaluation and adjourned this hearing shortly thereafter.  (*Id.* at 77.)

On December 13, 2016, the ALJ presided over the second hearing.  (*Id.* at 79–110.)  The ALJ began by asking Plaintiff if he still used marijuana and drank alcohol and whether his therapists knew about his marijuana and alcohol consumption.  (*Id.* at 86–89.)  When Dr. Houston resumed his testimony and finished explaining his opinion, the ALJ asked him whether there were opinions that were inconsistent with his opinion, and Dr. Houston referred to Dr. Madsen's report: "That, however, seems to have been subsequently resolved because [the] later consultative exam [by Dr. Jones] did note the alcohol's in remission.  We do have the ongoing marijuana use."  (*Id.* at 99–100.)

The ALJ did **not** conclude that Plaintiff had a severe substance abuse impairment (12.09), nor discuss substance abuse in explaining why Plaintiff's impairments did not meet the severity of the listed impairments.  *See* (*id.* at 19–20.) The ALJ addressed Plaintiff's marijuana and alcohol consumption only when he overviewed and assessed the medical record.  The ALJ briefly summarized Plaintiff's testimony about his marijuana and alcohol abuse.  (*Id.* at 23.)  At the conclusion of his summary of the medical evidence, the ALJ wrote:

> Overall, the medical record shows a long history of difficulties interacting with others.  However, when he is compliant with his medication and treatment recommendations, [Plaintiff] reports decrease in his symptoms. The undersigned also notes that [Plaintiff] has looked for work . . . and currently works part-time. . .  **Further, although not material to the determination of disability, the undersigned also notes that [Plaintiff] minimizes his drug use and the negative effects**, including his discharge from the Navy after a positive drug screen and recent incarceration following his fourth DUI.

(*Id.*) (emphasis added) (internal citations omitted).

1. Legal Principles

At the time of the ALJ's decision in 2017,[6] "Substance Addiction Disorders" were

listed in the Social Security Administration's Listing of Impairments at 12.09:

> 12.09 Substance Addiction Disorders: Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system.
> The required level of severity for these disorders is met when the requirements in any of the following (A through I) are satisfied.
> A. Organic mental disorders. Evaluate under 12.02.
> B. Depressive syndrome. Evaluate under 12.04.
> C. Anxiety disorders. Evaluate under 12.06.
> D. Personality disorders. Evaluate under 12.08.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2017).

Additionally, a claimant is not disabled if alcohol or substance addition is a

contributing factor material to the finding of disability. *Drapeau v. Massanari*, 255 F.3d

1211, 1214 (10th Cir. 2001) (citing 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535);

*see also* SSR 13-2p. The key factor in this analysis is "whether [the Commissioner]

would still find [the claimant] disabled if [he or she] stopped using drugs or alcohol." 20

C.F.R. § 404.1535(b)(1). The analysis proceeds in discrete steps, "the first of which is

the threshold determination whether the claimant has demonstrated a disability at all;

only if that 'condition precedent' is satisfied must the ALJ assess the role alcohol abuse

plays in the demonstrated disability." *Chambers v. Barnhart*, No. 03-7007, 2003 WL

22512073, *2 (10th Cir. Nov. 6, 2003) (citing *Drapeau*, 255 F.3d at 1214–15). Only then

---

[6] Listing 12.09 has been removed from the Administration's Listing of Impairments since the ALJ issued his decision. *See Morrow v. Berryhill*, No. 3:17-cv-00020, 2018 WL 7099974, *5 n.4 (W.D.N.C. Feb. 5, 2018).

will the ALJ evaluate which of the claimant's limitations would remain if the claimant stopped using drugs or alcohol.  20 C.F.R. § 404.1535(b)(1).

2.    Analysis

Plaintiff argues that the ALJ "improperly attempted to insert 12.09, substance addiction, as [an] impairment."  (Doc. # 19 at 20.)  He clarifies in his Reply that he does not challenge "the investigation of the effect of alcohol and drug use on his ability to function" but rather "the ALJ's repeated effort to have [his] use of medical marijuana, his discharge from the Navy over 30 years ago, and three DUIs over a period of 30 years be material to the determination."  (Doc. # 23 at 7.)  He cites the ALJ's questioning of Dr. Houston about whether Plaintiff satisfied the requirements for the 12.09 listing of substance addiction disorders as proof of the ALJ's attempts "to insert substance addiction as an issue."  (Doc. # 19 at 21.)

The Court concludes that the ALJ correctly applied governing legal principles by raising questions about Plaintiff's marijuana and alcohol abuse.  An ALJ is duty-bound to consider a claimant's drug and alcohol use, as it may bear on his or her final disability determination.  42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535); SSR 13-2p.  And at the time the ALJ decided this matter, substance abuse was also relevant to claimant's impairments under listing 12.09.   20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2017).

The Court also concludes that the ALJ's basis for raising such questions was supported by substantial evidence.  The medical record contained considerable evidence that justified inquiry into Plaintiff's marijuana and alcohol use.  Treatment records from various providers noted alcohol use and smoking, *see, e.g.*, (Doc. # 11-7

at 358–75, 424), as did the report by Dr. Jones, the second consultative examiner (Doc. # 11-13 at 719).  Plaintiff himself volunteered that he was discharged from the Navy for drug use and had been convicted of multiple DUIs in his testimony to the ALJ.  (Doc. # 11-2 at 45–54.)  The Court therefore rejects Plaintiff's argument that the ALJ improperly "played doctor" by asking and writing about Plaintiff's marijuana and alcohol use.  *See* (Doc. # 23 at 8.)

## D.  THE ALJ'S RELIANCE ON THE HYPOTHETICALS HE PRESENTED TO THE VOCATIONAL EXPERT

The impartial vocational expert, Ms. Dunne, testified at the end of the hearing on December 13, 2016.  (Doc. # 11-2 at 102–10.)  The ALJ presented Ms. Dunne with three hypothetical individuals and asked about their capabilities to do work.  In this first hypothetical, the ALJ described an individual of Plaintiff's age, education, and work experience, with Plaintiff's physical limitations.

> This individual is further limited to work that consists of only simple, routine, repetitive tasks.  He is able to maintain sufficient attention and concentration for extended periods of two-hour segments during a normal workday with normal breaks.  He's further limited to work that requires no more than brief and superficial interaction with the public. . . .  He is further limited to work that can be around coworkers throughout the workday, but with only occasional interaction with coworkers.  He's further limited to work that requires no more than occasional supervision.

(*Id.* at 104–05.)  Ms. Dunne testified that this first hypothetical individual could not perform any of Plaintiff's past work but could find unskilled work as a housekeeper/cleaner, marking clerk, or docking clerk.  (*Id.* at 105–06.)

In the second hypothetical, the ALJ assumed "the same hypothetical as hypothetical number one with the following" change: "[I]ncrease the limitation with

regard to supervisors in that this individual is limited to work that requires no more than brief and superficial supervision." (*Id.* at 106.) Ms. Dunne testified that this second hypothetical individual could work as a housekeeper/cleaner, marking clerk, or docking clerk. (*Id.*)

Finally, in the third hypothetical, the ALJ assumed the same hypothetical individual as in the second but added:

> [D]ue to a combination of medical conditions, associated pain, . . . and mental impairments[,] this individual will require on average two additional breaks each workday of a duration of between 10 and 15 minutes each in addition to regularly scheduled breaks, and will require more than one or two unscheduled or unexcused absences per month. That being the only change from hypothetical number two, are there are unskilled occupations this individual could perform?

(*Id.* at 106–07.) Ms. Dunne answered, "No," there were not jobs available to this third hypothetical individual, because those breaks and absences would exceed customary limits and eliminate job possibilities. (*Id.* at 107.)

The ALJ concluded at the fifth step of his analysis that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" and "based [his analysis] on the testimony of the vocational expert," Ms. Dunne. (*Id.* at 28–29.) The ALJ explained that when he asked Ms. Dunne whether such jobs existed, she testified that "given all of these factors," an individual with Plaintiff's age, education, work experience, and RFC would be able to perform and secure work as a housekeeper-cleaner, marking clerk, or routing clerk. (*Id.* at 28.)

1.    Legal Principles

The Commissioner may use the services of a vocational expert to determine whether a claimant is able to do his or her past relevant work or work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1560(b)(2); 20 C.F.R. § 404.1566(e).  A vocational expert "may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the demands" of such work. 20 C.F.R. § 404.1560(b)(2); *see Koopman v. Apfel*, 162 F.3d 1173 (10th Cir. 1998) (holding that where the claimant fell between two RFC levels, "the ALJ did exactly what he should have done – he turned to a vocational expert."); SSR 83-12.

"Hypothetical questions must include a full description of the claimant's impairments in order for the testimony elicited by such questions to constitute substantial evidence to support the ALJ's decision."  *Folsom v. Barnhart*, 309 F. Supp. 2d 1286, 1298 (D. Kan. 2004) (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)).  However, the ALJ need not include any alleged limitations which he or she does not accept as true in the hypothetical question.  *Id.* (citing *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985)).  Rather, the ALJ "may restrict [the] hypothetical to those limitations which she has found to exist based upon substantial evidence in the record." *Id.* (citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993)).

2.    Analysis

Plaintiff argues that the ALJ erred by "not articulat[ing] Ms[.] Dunne's conclusions from the third hypothetical" and instead "adopt[ing] the conclusion based on the [first

two] hypotheticals that only included physical impairments." (Doc. # 19 at 23.)  Plaintiff

also criticizes the ALJ's third hypothetical question for failing to "identify with specificity

the mental impairments or their limitations." (*Id.*)

Plaintiff's characterization of the ALJ's hypothetical questions to Ms. Dunne is

flatly contradicted by the transcript of the hearing. *See* (Doc. # 11-2 at 102–10.)  The

facts do not support Plaintiff's argument.  As the Court detailed, all three hypothetical

questions contained specific limitations caused by mental impairments.  The first

hypothetical individual, for example, was able to maintain attention and concentration

two hours at a time but required only occasional interaction with coworkers and no more

than occasional supervision. (*Id.* at 104–05.)  The second hypothetical individual had

those same limitations but was limited to work that required no more than brief,

superficial supervision. (*Id.* at 106.)

Plaintiff's argument also fails because the ALJ had the prerogative to base his

decision on Ms. Dunne's answer to his second hypothetical question, as opposed to his

third hypothetical question.  An ALJ can limit his or her hypothetical to the impairments

which he or she finds to be credible. *Taylor v. Callahan*, 969 F. Supp. 664, 670 (D. Kan.

1997) (quoting *Gay*, 986 F.2d at 1341).  "A claimed impairment that is found to be not

credible or is otherwise not supported by substantial evidence need not be included in a

hypothetical." *Hunter v. Chater*, 895 F. Supp. 1454, 1463 (D. Kan. 1995) (citing *Jordan

v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987)).   As the Court previously detailed, the

sole difference between the second and third hypothetical individuals was that the third

individual required "on average two additional breaks each workday of during between

10 and 15 minutes each in addition to regularly scheduled breaks, and will require more than one or two unscheduled or unexcused absences per month." (Doc. # 11-2 at 106–07.) Ultimately, the ALJ did not include this limitation in his determination of Plaintiff's RFC; he concluded instead that Plaintiff was able to work "a normal workday with normal breaks."[7] (*Id.* at 22.) The second hypothetical individual therefore was more analogous to Plaintiff than the third hypothetical individual. The ALJ did not err in relying on Ms. Dunne's testimony elicited by a hypothetical question that included only those limitations the ALJ found to be credible.

## V.    CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the January 11, 2017, written decision of the administrative law judge is AFFIRMED.

DATED:  July 16, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[7] This Court has already affirmed the ALJ's RFC conclusion as being supported by substantial evidence.